# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

JOSHUA MORRISSETTE,

             Petitioner,            :     Case No. 1:19-cv-912

  - vs -                              District Judge Matthew W. McFarland
                                        Magistrate Judge Michael R. Merz

WARDEN,
 Lebanon Correctional Institution,

                                 :

             Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This habeas corpus case, brought *pro se* by Petitioner Joshua Morrissette under 28 U.S.C. § 2254, is before the Court for decision on the merits. Relevant filings are the Petition (ECF No. 1), the State Court Record (ECF No. 6), and the Return of Writ (ECF No. 7). Although Magistrate Judge Litkovitz set a date for Petitioner to file a reply (ECF No. 4, PageID 18), he has never done so, despite requesting and receiving two extensions of time (ECF Nos. 9 through 12).

**Litigation History**

On October 13, 2016, a Hamilton County Grand Jury indicted Petitioner on one count of aggravated murder in violation of Ohio Revised Code § 2903.01(A)); two counts of murder in violation of Ohio Revised Code § 2903.02 (A) and (B)); one count of felonious assault in violation of Ohio Revised Code § 2903.11(A)(1)), with two firearm specifications on each count; one count

1

of having weapons while under disability in violation of Ohio Revised Code § 2923.13(A)(3));

one count of aggravated possession of drugs in violation of Ohio Revised Code § 2925.11(A)),

including a firearm specification; one count of possession of cocaine in violation of Ohio Revised

Code § 2925.11 (A)), including a firearm specification; and another count of having weapons while

under disability in violation of Ohio Revised Code § 2923.13(A)(3)), including two forfeiture

specifications (Indictment, Case No. B-1605788, ECF No. 6, Ex. 1, PageID 23-29). The trial jury

acquitted Morrissette on the aggravated murder charge, but convicted him on the other counts.

After merging some of the counts under Ohio Revised Code § 2941.25, the trial judge sentenced

Morrissette to an aggregate sentence of twenty-seven years to life imprisonment.

On direct appeal the Ohio First District Court of Appeals affirmed the conviction and

sentence. *State v. Morrissette*, 2018-Ohio-3917 (Ohio App. 1st Dist. Sept. 28, 2018), appellate

jurisdiction declined, 2018-Ohio-52019 (2018). Petitioner then timely filed the instant habeas

corpus petition *pro se*, pleading the following Grounds for Relief:

> **Ground One**: Mr. Morrissette['s] conviction was contrary to the manifest weight of the evidence and insufficient to support a conviction.
>
> **Supporting Facts:** The state's case in chief suffered from two critical defects that renderd [sic] it unconvincing: the lack of tangible, physical evidence placing the gun in Joshua's hand, and the credibility issues attendant to each witness that the state produce[d] to testify agaisnt [sic] him at trial, thus violating Morrissette's due process right, when insufficient evidence was produced to sustain a conviction.
>
> **Ground Two:** The State committed multiple instances of prosecutorial misconduct by presenting improper arguments to the jury during its closing statement, and by repeatedly referring to Mr. Morrissette as "Psycho" throughout its case in chief violating his right to due process and a fair trial.
>
> **Supporting Facts:** The state committed multiple instances of misconduct during Joshua's trial; they broadly entail two distinct

categories: improper arguments made durin [sic] the state's closing statement, and repeated references to Joshua as "psycho" throughout the course of the trial.  Comment on the supposed insanity defense punishment perhaps the most egregious of the improper arguments made by the state during closing statements were the repeated reference to Joshua's alleged attempt to feign insanity.

**Ground Three:** The trial court erred by instructing the jury on flight as evidence of Mr. Morrissette's guilt for having committed the offense of murder.

**Supporting Facts:**  Due process was violated when Morrissette was exposed to a erroroneous [sic] instruction that violated his substantial right to a fair trial.

**Ground Four:** Mr. Morrissette was deprived of his constitutional right to the effective assistance of trial counsel, under the 6th Amendment.

**Supporting Facts:**  There was one critical deficieny [sic] in their representation, and that was their willingness to indulge the state in their repeated use of Joshua's puportted [sic] nickname, 'Psycho' and in to fact join them in making such references. In addition to the innumerable instances in which the state used or elicited this nickname during it's [sic] case in chief, trial counsel used or elicited this nickname no less than one dozen times.

**Ground Five:** The cumulative effect of the preceding errors denied Mr. Morrissette of his constitutional due process right to a fair trial.

**Supporting Facts:**   The preceding errors were sufficiently prejudicial individually to warrant reversal of Joshua's conviction and remand for a new trial. Considered cumulatively, these errors indisputably deprived Joshua of his right to a fair trial. As such, his conviction should be reversed and his case remanded for a new trial.

(Petition, ECF No. 1, PageID 5-11.)

# Analysis

**Ground One:  Weight of the Evidence**


In his First Ground for Relief, Petitioner argues that his conviction is against the manifest weight of the evidence and also supported by insufficient evidence.

As the Return of Writ points out, these are two different claims.  In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997)*,* the Supreme Court of Ohio reaffirmed the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the manifest weight of the evidence.    It held:

> In essence, sufficiency is a test of adequacy.  Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.   *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, (1982), *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.  Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.  *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149.  Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its effect in inducing belief."  (Emphasis added.)
>
> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony.  *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661.  See, also, *State v. Martin*

4

> (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387. In *State v. Martin*, 20 Ohio App. 3d 172 (Hamilton Cty. 1983)(cited approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest weight of the evidence claim:

> In considering the claim that the conviction was against the manifest weight of the evidence, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. …

*Martin,* 20 Ohio App. 3d 172, ¶3 of the syllabus. On direct appeal, Morrissette made only a manifest weight claim, not an insufficiency of the evidence claim. A weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986). Therefore this Court cannot consider Morrissette's manifest weight claim on the merits.

Respondent argues Morrissette procedurally defaulted on his insufficiency of the evidence claim by not raising it on direct appeal. However, the undersigned has for some years followed the unpublished Sixth Circuit decision in *Nash v. Eberlin,* 258 Fed. Appx. 761 (6th Cir. Dec. 14, 2007), which held that a habeas petitioner did not default an insufficiency claim by only pleading a manifest weight claim. See *Hughes v. Warden*, 2011 U.S. Dist. LEXIS 54131(S.D. Ohio Apr. 27, 2011), adopted, 2011 U.S. Dist. LEXIS 54132 (S.D. Ohio May 20, 2011). Following that precedent, the Magistrate Judge finds Morrissette has preserved his insufficiency of the evidence

5

claim for presentation here.

Unlike the manifest weight claim, an allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th

> Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).  The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims.  *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

7

As noted above, Morrisette was convicted of two counts of murder, one count of felonious assault, two counts of having weapons while under a disability and two drug charges. From the way he pleads this claim, it appears he is claiming that there was insufficient evidence to prove beyond a reasonable doubt that he killed the victim using a gun. Nothing in his Petition appears to claim he did not have a prior felony conviction which would make it unlawful for him to possess a firearm or that he was not guilty on the drug charges[1].

Although manifest weight and insufficient evidence are different claims, an Ohio appellate decision that a verdict is not against the manifest weight of the evidence necessarily implies that there is sufficient evidence to convict. *Nash, supra*. In overruling Morrissette's manifest wright claim, the First District wrote:

> [*P23] In support of his argument that his murder conviction must be reversed, Morrissette contends that there was a dearth of tangible, physical evidence connecting him to Tremble's murder and that the witnesses' testimony connecting him to the murder lacked credibility. But our review of the record convinces us that the evidence in support of guilt was overwhelming. Contrary to Morrissette's argument, the surveillance video footage showing him reaching for something at his hip while looking at and walking towards the victim, in the exact area where the shooting took place, seconds before the shooting, was substantial physical evidence connecting him to the murder. And the inference from that footage was corroborated by testimony from multiple credible witnesses.
>
> [*P24] For instance, Taylor testified that he had seen Morrissette shoot Tremble and that Morrissette had asked for help in getting rid of his gun after admitting to shooting Tremble. Admittedly, Taylor had not stepped forward as an eyewitness until he had been arrested on his own charges. But Taylor's prior experience as a witness adequately explained his reluctance to assist the police.
>
> [*P25] Miller and Cody testified that Morrissette had been "looking for" Tremble when he left their apartment with a gun compatible with the murder weapon minutes before Tremble was

---

[1] The killing occurred on April 16, 2016, and the murder, assault and one of the weapons charges arises from that incident. Morrissette was not arrested until October 5, 2016. The second weapons charge and the drug charges arise from that arrest. *Morrissette*, 2018-Ohio-3917, ¶¶ 2 and 11.

shot. And Cody further testified that Morrissette had admitted to shooting Tremble when, as confirmed by the surveillance video footage, Morrissette returned to Cody's apartment building shortly after the shooting.

[*P26]  Other testimony supported a finding of guilt. Anderson and Inman both testified that they had heard Morrissette threaten to kill Tremble and admit to shooting him. Tremble's sister Naicha identified Morrissette as the individual she had seen at the crime scene immediately after the shooting. Finally, Morrissette's statements in his recorded phone calls from jail showed a consciousness of guilt. He admitted that he had fled from and concealed himself from the police to avoid apprehension, intended to feign insanity to avoid a long prison sentence for murder, and had tried to distance himself from the nickname Psycho because he knew it would be connected to the shooter.

[*P27]  Admittedly, much of the evidence in support of guilt was circumstantial. But circumstantial evidence inherently possesses the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus.

[*P28]  Moreover, the weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact. See *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. This is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1st Dist.1983). Consequently, we overrule the first assignment of error.

*Morrissette*, 2018-Ohio-3917.

As noted above, a federal habeas court does not re-weigh the credibility of the witnesses. That is the job in the first instance of a trial jury and then of a state appellate court and a habeas court must defer to their decision unless it is an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(2).  The direct testimony of witnesses recounted by the First District is plainly sufficient for conviction.

The other portion of Morrissette's insufficiency claim is that there is no "tangible, physical" evidence placing the gun in his hand.  This complaint shows a contemporary appreciation

of what it is possible to prove by "physical" evidence. Had the gun been recovered and shown to have Morrissette's DNA on it, this would presumably constitute "tangible, physical" evidence. Before DNA identification technology made such proof possible, the "gold standard" for identification was eyewitness testimony; one recalls Learned Hand's invocation of the possibility of such testimony from "twenty bishops." *Hotchkiss v. National City Bank*, 200 F. 287, 293 (S.D.N.Y. 1911). Presumably Morrissette would argue that even such eyewitness testimony was insufficient without "tangible, physical" evidence.

But that is not the law. "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011), quoting *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1993); *United States v. Wettstain,* 618 F.3d 577, 583 (6th Cir. 2010); *United States v. McAuliffe,* 490 F.3d 526, 537 (6th Cir. 2007); *United States v. Kelley,* 461 F.3d 817, 825 (6th Cir. 2006); *United States v. Reed,* 167 F.3d 984, 992 (6th Cir. 1999); *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir. 1992). "[D]irect evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330 (1960)(Brennan), citing *Rogers* v. *Missouri Pacific R. Co*., 352 U.S. 500, 508, n. 17(1957). Here the circumstantial evidence was, as the First District found, overwhelming.

Morrissette's First Ground for Relief is without merit and should be dismissed on that basis.


**Ground Two: Prosecutorial Misconduct**


In his Second Ground for Relief, Morrissette claims his trial was rendered unfair by

multiple instances of prosecutorial misconduct. Petitioner raised this claim as his Second Assignment of Error on direct appeal. The First District discussed the issue at length:

[*P29] In his second assignment of error, Morrissette contends that he is entitled to a new trial because of misconduct by the prosecutor. He takes issue with the prosecutor's use of his nickname Psycho throughout the trial and with some comments the prosecutor made during closing argument.

[*P30] The test for prosecutorial misconduct is whether the prosecutor made improper remarks at trial and, if so, whether those remarks prejudicially affected substantial rights of the defendant. *State v. Smith*, 14 Ohio St.3d 13, 14, 14 Ohio B. 317, 470 N.E.2d 883 (1984). Misconduct does not affect the defendant's substantial rights unless it denied the defendant a fair trial. *See State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 140; *State v. LeMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 121; *State v. Neeley*, 143 Ohio App.3d 606, 621, 758 N.E.2d 745 (1st Dist.2001). We will not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. *LeMar* at ¶ 121; *Smith* at 15.

[*P31] Although Morrissette argues that the prosecutor committed misconduct, except where noted defense counsel failed to object and thus forfeited all but plain error. *See State v. Slagle*, 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992). HN5 To prevail on plain-error review, Morrissette must establish that but for the misconduct, the outcome of the trial clearly would have been otherwise. *See Slagle* at 605; *State v. Simmons*, 2014-Ohio-3695, 19 N.E.3d 517 (1st Dist.), ¶ 75, 19 N.E.3d 517, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus.

[*P32] *Repeated references to Morrissette as Psycho*. We first address the misconduct claim stemming from the repeated references to Morrissette as Psycho. It was well established at trial that Psycho was one of Morrissette's nicknames. The prosecutor referred to Morrissette as Psycho when questioning certain witnesses and occasionally during opening statement and closing argument. According to Morrissette, the prosecutor referred to him as Psycho at least 54 times and additionally elicited responses from witnesses establishing the fact that he went by that nickname. He contends these references were intended by the prosecutor to "subtly" paint him as person prone to antisocial behavior.

11

[*P33]  It is improper for a prosecutor to use a nickname for the purpose of impugning the character of the defendant. *State v. Gillard*, 40 Ohio St.3d 226, 230, 533 N.E.2d 272, 535 N.E.2d 315 (1988), *abrogated on other grounds, State v. McGuire*, 80 Ohio St.3d 390, 1997- Ohio 335, 686 N.E.2d 1112 (1997), cited in *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 203. And, in general, an unnecessary use of a disparaging nickname is improper. *See State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 262. But this misconduct does not result in plain error if, when weighing the evidence of guilt against the significance of the reference to the nickname, it is not clear that, had the nickname not been improperly used, the outcome of the trial would [**18] have been different. *See Gillard* at 230; *see generally Simmons* at ¶ 77 (Prosecutor's improper and repeated reference to the defendant as the "offender" in closing argument did not affect the outcome of the trial.).

[*P34]  Here, the prosecutor at times needed to refer to Morrissette by his nickname Psycho and to elicit responses establishing the nickname for purposes of identification and clarity. For instance, several of the state's witnesses only knew Morrissette as Psycho, and the nickname was used to tie this testimony to the other testimony incriminating Morrissette. The prosecutor also referenced the nickname during closing argument when making a "consciousness of guilt" argument. This argument was based on Morrissette's statement during a recorded phone conversation directing the other caller who had referred to him as "Psycho" to stop calling him by that name. Morrissette told her, "That's what they want to hear, that's not my name. Everybody keep calling me that. That ain't my name, that's what they want to hear." Morrissette's comments, when read in context, suggest that Morrissette wanted to distance himself from that nickname because he knew witnesses would identify the shooter by that name.

[*P35]  The prosecutor used the nickname a few times when it was not required for identification or clarification purposes, such as after a witness who only knew Morrissette as Psycho had already confirmed Morrissette's identity as the defendant. This unnecessary use was improper, but it was not an overt attempt to impugn Morrissette's character and any impugning effect was negligible. At no point did the prosecutor bring up the origin of the nickname or argue that the nickname reflected on Morrissette's character. After considering these facts and the state's overwhelming evidence of guilt, we conclude that the unnecessary use of the Psycho nickname by the prosecutor was not outcome determinative and did not result in plain error.

[*P36] *Alleged misconduct during closing argument*. Morrissette argues the prosecutor committed multiple instances of misconduct during closing argument. A prosecutor is entitled to a certain degree of latitude during summation, and may comment at that time on reasonable inferences from the evidence. *State v. Smith*, 14 Ohio St.3d 13, 13, 14 Ohio B. 317, 470 N.E.2d 883 (1984); *State v. Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970). We review the state's closing argument in its entirety to determine whether the allegedly improper remarks were prejudicial. *Slagle*, 65 Ohio St.3d at 607, 605 N.E.2d 916, citing *State v. Moritz*, 407 N.E.2d 1268, 63 Ohio St. 2d 150, 157 (1980).

[*P37] We first address Morrissette's complaint that the prosecutor improperly commented on statements he made during his jail calls indicating that he would plead insanity so that he could be sent to a mental-health facility for a short time instead of serving a long prison sentence. The record shows that in the opening portion of closing argument, the prosecutor mentioned that Morrissette had said some things during recorded jail calls that "[we]re not good for him." The prosecutor then stated:

> You hear [Morrissette] talking [in his jail calls] about wanting to be found not guilty by reason of insanity. To be found not guilty by reason of insanity, you have to have committed the crime. To be found not guilty—John Hinkley [sic] was found not guilty by reason of insanity.

[*P38] Defense counsel objected by stating, "Your Honor, I don't think there is evidence." The court instructed the prosecutor to "move on." The prosecutor did not mention Hinckley again, but again referenced Morrissette's recorded statements involving his intended insanity defense by reminding the jury, "Defendant was stating he thinks this way, he can go to Summit. We learned during trial Summit is a mental health facility in town, and he could be back out in 2021."

[*P39] The state returned to this line of argument in the rebuttal portion of its closing argument, when the prosecutor stated:

> The next thing you have in your universe [of evidence] is these jail calls where he talks about this insanity defense. That's what it is. Insanity defense is, I did it, but I was crazy. * * * I will plead insanity. I will do five or six years. I will get out of here. I will be sitting in Summit. It will be a piece of cake.

13

[*P40]  Defense counsel objected to this argument and claimed it was improper because there was "no evidence or testimony or instruction from the court about what insanity or insanity defenses were." The court then instructed the jury, "You have to take the law from me. This is closing argument. This is not evidence. Ladies and gentleman, this jury will determine what the facts are and apply the law to that."

[*P41] The prosecutor then continued:

> Are these the statements of an innocent man, I will plead insanity? You can tell from the conversation he is trying to pull a fast one. I will plead insanity. I will do five or six years. I will get out of here. I will be sitting in Summit. It will be a piece of cake. That's not innocence. It is a subliminal admission of guilt.

[*P42] Morrissette contends the prosecutor's comments transcended the bounds of acceptable argument. Specifically, Morrissette argues the reference to Hinckley, the "would-be assassin" of former President Ronald Reagan, was improper and highly inflammatory. We agree that the reference to Hinckley, which defense counsel objected to, was improper and the prosecutor should not have injected that name into the trial. But we reject any possibility that the prosecutor's fleeting reference to the name denied Morrissette a fair trial. We conclude instead, in the context of the entire closing argument and the other evidence at trial, that the reference to Hinckley was harmless.

[*P43] Next, Morrissette contends these remarks on his plan to plead insanity touched on the issue of punishment, an issue outside the province of the jury. The state argues that Morrissette's statements about pursuing an insanity defense were evidence of consciousness of guilt and, therefore, the prosecutor's statements were a fair comment on the evidence.

[*P44] "Questions of punishment have no place in the trial of guilt or innocence," *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 138, and counsel should not comment on those matters. Here, the state was not directly commenting on Morrissette's punishment in this case, but was using Morrissette's own words to explain why the jury could infer a tacit admission of guilt from Morrissette's intent to feign insanity. Morrissette claims there was an improper "subtext" to the state's argument, that he "was a dangerous criminal who could potentially be back on the streets in

> as few as five years if the jury didn't do their civic duty to convict him of murdering" Tremble. But Morrissette's reading of the state's argument is a stretch. While we do not condone the prosecutor's comments, Morrissette did not object in the trial court on the ground that the prosecutor was touching on punishment, and he has failed to demonstrate that these comments were outcome determinative.
>
> [*P45] Morrissette also attacks the prosecutor's contention during the rebuttal portion of closing argument that the state's evidence was "completely unrebutted," claiming the prosecutor misrepresented the record and improperly shifted the burden of proof. Morrissette contends the statement was "false" because defense counsel's cross-examination of the witnesses exposed "gaps and inconsistencies" in the evidence and testimony offered by the state. But we conclude that the prosecutor's commentary on the evidence, when read in context, falls squarely within the latitude afforded to counsel.
>
> [*P46] The prosecutor's full argument on this issue was that inconsistencies brought out by the defense were not material. Moreover, the prosecutor's comment was permissible comment on the "relative strength" of the state's case, *State v. Ferguson*, 5 Ohio St.3d 160, 163, 5 Ohio B. 380, 450 N.E.2d 265 (1983), and in no way implied that the state's burden of proof had shifted to the defense. *See State v. Collins*, 89 Ohio St.3d 524, 527, 2000- Ohio 231, 733 N.E.2d 1118 (2000).
>
> > * * *
> > [¶¶ 47-48 omitted because these paragraphs discuss an asserted instance of misconduct which weren not brought forward in the Petition.]
>
> [*P49] Ultimately, we conclude that although some of the prosecutor's comments were improper, the effect of those improper comments, even when combined, was of no significance and did not result in an unfair trial. Accordingly, we overrule the second assignment of error.

*Morrisette*, 2018-Ohio-3917.

As the First District noted, defense counsel failed to object to almost all of these asserted instances of prosecutorial misconduct and Morrissette thereby forfeited all but plain error review. On this basis, Respondent claims most of the Second Ground for Relief is barred by this procedural

default.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>                    . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St.3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012),*citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010).

An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,*

431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

To the extent Petitioner's claims of prosecutorial misconduct are based on prosecutorial comments that were not objected to, they are procedurally defaulted and should be dismissed on that basis.

To the extent defense counsel did object to prosecutorial comment about the insanity defense, the Magistrate Judge finds the comments were proper to call the jury's attention to Morrissette's state of mind in making calls from jail in which he implied he could avoid serious prison time by pleading not guilty by reason of insanity and being committed to a mental institution.  A plea of not guilty by reason of insanity implies an admission of committing the crime but excusing it by one's mental state. Morrissette's comments, taken in context, are plausibly seen as an admission of having committed the murder.  The comment about John Hinckley, the man who attempted to assassinate Ronald Reagan, was unnecessary, but fleeting.

In *Serra v. Michigan Dept of Corrections*, 4 F.3d 1348 (6th Cir. 1993), the court identified factors to be weighed in considering prosecutorial misconduct claims:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.* at 1355-56, *quoting Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982)(citation omitted). The misconduct must be so gross as probably to prejudice the defendant. *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.), *cert. denied*, 522 U.S. 1001 (1997)(citation omitted); *United States v. Ashworth*, 836 F.2d 260, 267 (6th Cir. 1988).  Claims of prosecutorial misconduct are reviewed deferentially on habeas review.  *Thompkins v. Berghuis,* 547 F.3d 572 (6th Cir. 2008), rev'd on other grounds, 560 U.S. 370 (2010), *citing Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004),

*cert. denied,* 544 U.S. 921 (2005). On habeas review, "the relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 91 L. Ed. 2d 144, 106 S. Ct. 2464 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 40 L. Ed. 2d 431, 94 S. Ct. 1868 (1974)).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The First District's decision on Morrissette's prosecutorial misconduct claim is neither contrary to nor an objectively unreasonable application os the Supreme Court's precedent on such claims. Petitioner's Second Ground for Relief should therefore be dismissed as in part procedurally defaulted and in part without merit.

## Ground Three: Erroneous Flight Instruction

In his Third Ground for Relief, petitioner asserts he was deprived of due process of law by the trial court's instruction on the inference of guilt that a jury can draw from a defendant's flight after a crime has been committed.

The Petition is unclear whether Morrissette is claiming that the flight instruction was a misstatement of Ohio law on the subject or that there was insufficient evidence presented to warrant such an instruction and Morrissette has filed no reply to clarify his claim. In arguing this

claim on direct appeal, Petitioner's appellate counsel made an insufficient evidence argument. Petitioner is proceeding in this Court *pro se* and is therefore entitled to a liberal construction of his pleadings. *Haines v. Kerner*, 404 U.S. 519 (1972); *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). The Magistrate Judge will therefore read the Petition as bringing forward the claim made by counsel on direct appeal.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). Alleged errors in jury instructions normally do not rise to the level of federal constitutional violations. See *Engle v. Isaac*, 456 U.S. 107 (1982); *Turoso v. Cleveland Municipal Court*, 674 F.2d 486 (6th Cir. 1982); *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979); *Weston v. Rose,* 527 F.2d 524 (6th Cir. 1975). When the evidence presented does not support a requested jury instruction and that determination is based upon a state court's interpretation and application of state law, an asserted error relating to the jury instruction is not cognizable in federal habeas corpus unless the failure amounted to a fundamental miscarriage of justice. *See Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990).

The First District considered the erroneous flight instruction claim as the Third Assignment of Error on direct appeal and decided it as follows:

> [*P50] In his third assignment of error, Morrissette argues the trial court erred in giving a jury instruction on flight. He argues that the evidence did not show he fled from justice, rending the instruction improper. We disagree.
>
> [*P51] Evidence of the accused's flight, concealment, and related conduct is admissible to show consciousness of guilt. *See State v. Taylor*, 78 Ohio St.3d 15, 27, 1997- Ohio 243, 676 N.E.2d 82 (1997); *State v. Eaton*, 19 Ohio St.2d 145, 160, 249 N.E.2d 897 (1969); *State v. Summerlin*, 1st Dist. Hamilton No. C-160539, 2017-

Ohio-7625, ¶ 21. An instruction on flight is proper if the record contains sufficient evidence to support the charge. *Summerlin* at ¶ 21. "Flight" means some escape or affirmative attempt to avoid apprehension by the police. *Id.*, citing *State v. Brundage*, 1st Dist. Hamilton No. C-030632, 2004-Ohio-6436, ¶ 17. The decision whether to instruct the jury on flight is a matter within the trial court's discretion and is reviewed for an abuse of that discretion. *Id.*

[*P52]  The state's evidence in this case, if believed, demonstrated that after the shooting Morrissette left town for some period of time and never showed up for work again or contacted his employer to terminate his employment. In the recorded jail calls, Morrissette repeatedly acknowledged that he knew the police had been looking for him and he laughed about successfully eluding them. He recalled eluding apprehension by a squad of police officers by hiding in a tree. On another occasion he had rubbed "hella hair grease," "seasoning," and "cologne" on his body to prevent K-9 police dogs from alerting to his scent. Under these circumstances, we cannot hold that the trial court's decision to give a flight instruction was so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion. *See State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980); *Summerlin* at ¶ 21. Consequently, we overrule the third assignment of error.

Morrissette, 2018-Ohio-3917.

There is nothing unconstitutional *per se* about instructing a jury that it may infer consciousness of guilt from flight, meaning attempts to elude the police.  Given the evidence at trial about Morrissette's attempts to avoid the police, there was ample evidence to warrant giving the instruction.  That is, such an instruction in these circumstances did not create a manifest injustice.  Ground Three should be dismissed on the merits.

**Ground Four:  Ineffective Assistance of Trial Counsel in Not Objecting to "Psycho"**

In his Fourth Ground for Relief, Morrissette claims he received ineffective assistance of trial counsel when his counsel failed to object to the prosecutor's of the nickname "Psyhco" when

referring to Petitioner.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

The First District considered this claim as Morrissette's Fourth Assignment of Error on direct appeal and decided it as follows:

> [*P53] In his fourth assignment of error, Morrissette contends he was denied the effective assistance of trial counsel because his attorneys failed to object to the state's repeated use and elicitation of the nickname Psycho, and actually joined the state in making such references.
>
> [*P54] To prevail on an ineffective-assistance-of-counsel claim, Morrissette must demonstrate that counsel's performance fell below an objective standard of reasonableness and he was prejudiced as a

result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). With regard to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To demonstrate prejudice, Morrissette must establish that, but for counsels' errors, there is a reasonable probability that the result of the trial would have been different. *Strickland* at 694; *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). The failure to make an adequate showing on either prong is fatal to an ineffective-assistance-of-counsel claim. See *Strickland* at 697.

 [*P55] Here, Morrissette cannot prevail on his claim. When disposing of the second assignment of error, we found the prosecutor had acted improperly when he referred to Morrissette as Psycho in instances where that reference had not been required for identification purposes, but concluded that any improper use of the nickname had not affected the outcome of the trial. We determined that any impugning effect was negligible when weighed against the overwhelming evidence of guilt. For similar reasons, we hold that defense counsels' failure to object to the state's unnecessary use of the name and defense counsels' own allegedly unnecessary use of the name at trial was not outcome determinative, either. The jury was not told the origin of the nickname and it was not used in an impugning manner. Although the nickname was used a significant number of times, this alone does not demonstrate the requisite prejudice to establish an ineffective-assistance-of-counsel claim. The strength of the state's evidence was such that we are confident the jury would have found Morrissette guilty of the offenses even absent the allegedly deficient performance by trial counsel. Accordingly, we overrule the fourth assignment of error.

*Morrissette*, 2018-Ohio-3917.

The First District found that at least some uses of Morrissette's nickname were necessary for purposes of identification because some of the witnesses knew him only by the nickname. Morrissette does not dispute that the nickname was in common usage in his neighborhood. While the nickname is certainly pejorative, there is no evidence that the prosecutor made it up. The First District found it had been used on some occasions when it was not necessary for identification and indeed it had even been used by Morrissette's own counsel. This is probably a result of the common phenomenon that when someone is identified by a nickname early in a lengthy discourse,

24

there is a tendency to use the nickname shortcut later in that discourse. It is unfortunate that Morrissette had acquired such an pejorative nickname, but there is little doubt that, whatever its origin, it had "stuck" to him by the time of trial. Under those circumstances the First District's decision that it did not constitute ineffective assistance of trial counsel to fail to object is entitled to deference; it is not an objectively unreasonable application of *Strickland*. Ground Four should be dismissed on the merits.

**Ground Five: Cumulative Error**

In his Fifth Ground for Relief, Morrissette argues that, even if the other grounds alone do not warrant relief, all four of them taken together are sufficient to grant the writ. At least since the adoption of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214), such claims have not been cognizable in habeas corpus. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011), *cert. denied,* 132 S.Ct. 2751 (2011), *citing Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied sub nom. Moore v. Simpson,* 549 U.S. 1027 (2006).; *Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012).

Morrissette's Fifth Ground for Relief should therefore be dismissed for failure to state a claim upon which habeas corpus relief can be granted.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it

is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

October 19, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.